# IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

In the Matter of:                     )
                                      )          Case No. 20-02586-DSC
CrossPlex Village QALICB, LLC,        )
        Debtor.                       )          Chapter 11
                                      )
                                      )

---

CrossPlex Village QALICB, LLC,        )
        Plaintiff.                    )          A.P. No. 20-00038-DSC
v.                                    )
                                      )
JohnsonKreis Construction Co., Inc., *et al.*   )
        Defendants.                   )

## MEMORANDUM OPINION

   This matter is before the Court on a Motion to Dismiss First Amended and Restated

Complaint and Renewed Request to Abstain ("Motion to Dismiss") (AP Doc. 23) filed by

JohnsonKreis Construction Company, Inc. ("JohnsonKreis"), a Motion to Dismiss First Amended

and Restated Complaint filed by Hartford Fire Insurance Company ("Hartford Motion to Dismiss")

(AP Doc. 25), and several Responses. (AP Doc. Nos. 14, 28, and 30.) A hearing on the Motions to

Dismiss was held on January 27, 2021.[1] Appearing at the hearing were Andrew P. Campbell and

A. Todd Campbell for the chapter 11 debtor and plaintiff, CrossPlex Village QALICB, LLC

("CrossPlex"); T. Parker Griffin, Jr., for defendant JohnsonKreis; Benjamin S. Goldman and

---

[1] Pursuant to Administrative Order 20-04 and due to the COVID-19 outbreak, all hearings before the United
States Bankruptcy Court for the Northern District of Alabama have been held telephonically since March
23, 2020, absent extraordinary circumstances. The hearing held in this case on January 27, 2021, was held
telephonically.

Joseph L. Cowan II, for defendant Hartford Fire Insurance Company; and Rachel L. Webber as counsel for the United States Bankruptcy Administrator.

The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the General Order of Reference, as amended, entered by the United States District Court for the Northern District of Alabama. The amended complaint alleges sufficient jurisdictional facts to place these proceedings within this Court's core jurisdiction. Further, while JohnsonKreis has advocated that CrossPlex's claims are barred as a matter of law and that this Court should abstain from exercising jurisdiction, both parties have participated fully in the litigation of this matter without challenging the authority of this Court to enter final orders or judgment.

Based upon the filings, the representations and arguments of the parties, and for the reasons set forth herein, the Court **FINDS** and **CONCLUDES** as follows:[2]

**Findings of Fact[3]**

This adversary proceeding concerns a dispute over the construction of a mixed-use development project in the Five Points West area of Birmingham, Alabama. The development, CrossPlex Village, is located adjacent to the Birmingham CrossPlex, which is a 750,000 square foot, $46 million, multi-purpose athletic and meeting facility that was developed by the City of Birmingham to revitalize the Five Points West community. CrossPlex Village was conceived to

---

[2] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the contents of its own files and does so in this case. *See ITT Rayonier, Inc. v. U.S.*, 651 F.2d 343 (5th Cir. Unit B July 1981); *Florida v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975).

[3] The findings of fact are taken from the pleadings in the chapter 11 bankruptcy case, the adversary proceeding, and records from the arbitration proceeding between JohnsonKreis and CrossPlex that have been submitted in connection with the chapter 11 case or this adversary proceeding.

complement the Birmingham CrossPlex and to further that revitalization effort; it is anchored by a Comfort Inn & Suites and has several retail tenants.

The development acquired funding through commercial development revenue bonds and other complex financial transactions involving new market tax credits and numerous lenders. With funding in place, construction of CrossPlex Village began in July 2017. (Doc. 80.)[4] Just prior, on May 31, 2017, CrossPlex Village and JohnsonKreis executed a construction contract[5] that provided for the construction of a hotel, a commercial or shopping center, and a restaurant center. (AP Doc. 13 at ¶¶ 37-38). JohnsonKreis engaged defendant Bear Roofing as the subcontractor to install the roofs on each of the buildings. (AP Doc. 13 at ¶ 38.) The roofs were "manufactured by Carlisle Construction Material d/b/a Versico Roofing Systems ("Versico") and installed by Bear Roofing while under the oversight and direction of JohnsonKreis." (AP Doc. 13 at ¶ 40.)

Accepting the truth of the allegations in the complaint, as this Court must do at this stage of the case, the problem at CrossPlex Village is that the roofs leak, and not just a little. Either they are defective or they were improperly installed (AP doc. 13 at ¶ 40), but they leak nonetheless and

---

[4] References to docket entries in the chapter 11 bankruptcy case, case number 20-02586, are referred to as "Doc." References that are made to docket entries in the instant adversary proceeding, case number 20-00038, are referred to as "AP Doc."

[5] It is undisputed that the construction contract – a Standard Form Agreement Between Owner and Contractor – contained an arbitration provision providing, in part:

> § 15.4.1 If the parties have selected arbitration as the method for binding dispute resolution in the Agreement, any Claim subject to, but not resolved by, mediation shall be subject to arbitration which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with the Construction Industry Arbitration Rules in effect on the date of the Agreement . . . .

> § 15.4.2 The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

(AP Doc. 14-1 at 98.)

3

that is the gist of CrossPlex's grievance. JohnsonKreis, according to the amended complaint, was made aware of the roof leaks in late January 2018. (AP Doc. 13 at ¶ 41.) Thereafter, from February through April 2018, construction was halted to conduct mold tests and remediate mold. (AP Doc. 13 at ¶¶ 42-43.) JohnsonKreis hired a roofing consultant but did not follow all the recommendations that were made, nor did they report "the extent of the recommended repairs" to CrossPlex. (AP Doc. 13 at ¶ 44-45.) The roofs continue to leak today, despite an "April moisture report from Roof Asset Management, Inc., purporting to indicate" that the leaks were resolved. (AP Doc. 13 at ¶ 46.)

Roof leaks notwithstanding, JohnsonKreis ordered subcontractors to continue working, including a sheetrock subcontractor who "formally objected" to the installation of sheetrock under leaking roofs. (AP Doc. 13 at ¶¶ 49-50.) Because the roofs continued to leak, sheetrock that was damaged had to be removed and replaced, delaying construction for "up to four months." (AP Doc. 13 at ¶¶ 52-53, 56(c).) These delays "caused construction costs to increase." (AP Doc. 13 at ¶ 56(d).) And instead of divulging the roof leaks as the culprit for construction delays, JohnsonKreis blamed delays on "minority subcontractors who could not keep up." (AP Doc. 13 at ¶¶ 47-48.)

Ultimately, construction progressed. Construction of the restaurant, retail, and hotel space was completed in October 2018. (Doc. 55-4 at ¶ 15.) On grounds that they were still owed approximately $1.43 million for the construction of CrossPlex Village (plus interest, attorneys' fees, and other costs), JohnsonKreis sued CrossPlex in the Circuit Court of Jefferson County, Alabama, on June 17, 2019, for nonpayment, asserting breach of contract, unjust enrichment, an Alabama Prompt Payment Act claim, and perfection of a mechanic's lien. (Doc. 55-4; AP Doc. 14-1 Exh. A.)

4

*The Arbitration*

Pursuant to an arbitration agreement incorporated in the contract with CrossPlex, JohnsonKreis filed an arbitration demand with the American Arbitration Association on August 2, 2019. (Doc. 55-5; AP Doc. 13 at ¶ 57; AP Doc. 14-1, Exh. A at 96 (arbitration provision).) CrossPlex answered the JohnsonKreis complaint and asserted several affirmative defenses — among them a defense that JohnsonKreis's claims were barred by "its own breach of contract, default, failure to perform, fraud, bad faith and/or other wrongful conduct which directly contributed to or caused [JohnsonKreis's] alleged damages." (AP Doc. 14-1, . Exh. B, 103-108 at ¶ 6.)

The arbitration scheduling order set November 26, 2019, as a deadline to file counterclaims. (Doc. 94-2, Exh. 10.) On December 6, 2019, CrossPlex filed its counterclaim for breach of contract. (AP Doc. 13 at ¶ 57; AP Doc. 14-1, Exh. C, 109-112) The counterclaim asserted that JohnsonKreis breached the construction contract by: "(1) demanding payment for Contingency costs without obtaining prior written approval by CrossPlex; (2) demanding payment for retainage for costs paid directly by CrossPlex at [JohnsonKreis's] request; and (3) demanding payment for work that [JohnsonKreis] did not perform and/or did not document or substantiate as required by the Contract." (AP Doc. 14-1, Exh. C, 111 at ¶ 7.) Factually, the counterclaim alleged that under the construction contract (which provided for payment on a cost plus fee basis with a guaranteed maximum price ("GMP")) JohnsonKreis "was responsible for all costs exceeding the GMP, without reimbursement by CrossPlex." (AP Doc. 14-1, Exh. C, 111 at ¶ 5.) It also made factual allegations concerning JohnsonKreis payment applications.[6] (AP Doc. 14-1, Exh. C, 111

---

[6] Precisely, the allegation asserted that "JohnsonKreis submitted a revised Application and Certification for Payment Number 14 to CrossPlex ("Application 14") and an Application and Certification for Payment of Retainage ("Retainage Application"). (AP Doc. 14-1, Exh. C at ¶ 6.)

5

at ¶ 6.) Based upon these factual allegations, CrossPlex claimed that JohnsonKreis "breached the Contract by claiming amounts that it was not owed. . . ." (AP Doc. 14-1, Exh. C, 111 at ¶ 7.) The counterclaim did not include any claims or allegations concerning roof defects, roof leaks, or water damage. (AP Doc. 14-1, Exh. C, 109-112.)

The arbitration proceeded for nearly a year and the final arbitration hearing took place on July 13-15, 2020. (AP Doc. 14-1 at ¶ 7.) Both parties and their counsel participated in the arbitration by attending hearings, filing motions, submitting documents, and providing evidence to the arbitrator. JohnsonKreis's motion for partial summary judgment and CrossPlex's motion for summary judgment, both of which were denied, were among the filings submitted during the eleven-month pendency of the arbitration. (Doc. 56-1 at ¶ 12.) Even before dispositive motions were filed, however, CrossPlex filed a statement of defense that reiterated its affirmative defense that JohnsonKreis's "claims were barred, in whole or in part, by the terms of the Contract, and by [JohnsonKreis's] breach of contract, default, failure to perform, bad faith and/or wrongful conduct which directly contributed to its alleged damages." (Doc. 94-4, Exh. 12 at 1.)

Both parties participated in discovery before the final arbitration hearing. Based, however, on the arguments advanced previously in its chapter 11 case, CrossPlex disputes that the discovery produced by JohnsonKreis was complete or satisfactory. What is not disputed, however, is that JohnsonKreis deposed CrossPlex's authorized representative, Robert Nesbitt, on June 25, 2020. (Doc. 94-9, Exh. 17.) At the deposition, Mr. Nesbitt was questioned about the roof leaks and he testified that the leaks were observed in the hotel "shortly after opening," which he believed to be in September of 2018. (Doc. 94-9, Ex. 17, Nesbitt Depo. 182:1-183:6.) He also testified that he believed JohnsonKreis was notified about the leaks "from time to time." (Doc. 94-9, Ex. 17,

Nesbitt Depo. 182:4-6.) And, he testified, JohnsonKreis's subcontractor did work to resolve the leaks. (Doc. 94-9, Ex. 17, Nesbitt Depo. 183:10-13.)

Both parties submitted pre-hearing briefs in the days leading up to the final arbitration hearing. (Doc. 56-1 at ¶ 12, main case.) The CrossPlex pre-hearing brief included a section titled "delay due to water intrusion." (Doc. 94-10 at 5-6.) Specifically, the pre-hearing brief described a sheetrock subcontractor's warning and a "significant water intrusion from the roof" in January 2018. (Doc. 94-10 at 5.) Due to the water intrusion, the pre-hearing brief asserted, sheetrock had to be removed and replaced, which caused "significant delay to the project timeline." (Doc. 94-10 at 5.) The pre-hearing brief further asserted that JohnsonKreis, "blamed the delay on subcontractors (specifically minority subcontractors) that could purportedly not keep up with the schedule. However, the water intrusion issue undoubtedly delayed the project for several weeks, if not the full two months." (Doc. 94-10 at 6.)

CrossPlex filed a warranty claim with JohnsonKreis for "necessary repairs" associated with roof leaks and defects on July 10, 2020. (Doc. 13 at ¶ 60.) At the final arbitration hearing, counsel for CrossPlex addressed the warranty claim to some extent, confirming that a warranty claim was made and clarifying that the intent for doing so was namely "to ask the Owner to make good on his warranty," not as grounds for "claiming any damages as a result of a defective roof." (Doc. 28-1, Exh. A at 65:14-21.) In that regard, CrossPlex's counsel also remarked that a roofing consultant (retained first by JohnsonKreis in 2018 and again by CrossPlex in 2020) would "tell you that the roof has the same problems today as it did two years ago." (Doc. 28-2, Exh. A at 65:11-13.)

The final arbitration hearing took place over two days, July 13-15, 2020. (Doc. 13 at ¶ 62.) After the hearing concluded, both parties submitted proposed awards to the Arbitrator. (Doc. 55-10, Exh. 8, 9.) CrossPlex's proposed award identified contract breaches by JohnsonKreis that

7

justified a reduction in the amount owed, proposing that JohnsonKreis be paid $311,719.00 instead of the $1.43 million outstanding. (Doc. 55-10 at 2-4, 13.) One of the breaches identified was a breach of Article 3.3 of the General Conditions where the proposed finding assigned liability based on JohnsonKreis's "failing to notify Owner of material errors by Contractor and subcontractors." (Doc. 55-10 at 3.) To that end, the proposed finding included that "ordering work to be done after a defective roof was installed, which resulted in work that had to be demolished when it was damaged by rain, and work that had to be re-done" constituted a breach. (Doc. 55-10 at 3.). CrossPlex's proposed award included evidence demonstrating that sheetrock installation happened "over the sheetrock contractor's emphatic warning and objection – before the roof was watertight." (Doc. 55-10 at 6.) In that regard, CrossPlex's proposed award also found that "work done under a defective roof" transpired at a time when the Owner had no subcontracts and was therefore "unable to detect excessive billings for work such as sheetrock." (Doc. 55-10 at 7.) Because the roof was not watertight and water intruded the building, remediation was required and the project was delayed by two months. (Doc. 55-10 at 7.) CrossPlex's proposed award included that JohnsonKreis was obligated as the contractor "to make full disclosure of the Contractor's errors, including roofing and water intrusion issue caused by Contractor's order to a subcontractor to install sheetrock under a roof that was not watertight, and the costs associated with same." (Doc. 55-10 at 10.)

After the arbitration had concluded, on or about July 29, 2020, JohnsonKreis denied the warranty claim that was submitted by CrossPlex on July 10, 2020. (AP Doc. 13 at ¶ 61.) And, according to CrossPlex's amended complaint, because "the Arbitration began on July 13 and concluded on July 15 of 2020, the claims surrounding the roof leaks and JohnsonKreis' refusal to

honor its warranty were never alleged in the Arbitration and are now the basis for this Adversary Proceeding." (AP Doc. 13 at ¶ 62.)

### *Chapter 11 Bankruptcy*

After the arbitration concluded but before the Arbitrator entered his award, CrossPlex filed its chapter 11 case on August 10, 2020. Ten days later, JohnsonKreis filed a Motion for Relief seeking stay relief to permit the Arbitrator to enter his award and the Jefferson County Circuit court to confirm the award. This Court conducted a hearing on the stay relief motion, JohnsonKreis ultimately prevailed, and the automatic stay was lifted for the Arbitrator to enter his award in the already-concluded arbitration. (Doc. 146.) In moving for stay relief, JohnsonKreis argued that the arbitration record evidenced CrossPlex "vigorously" litigating its "defenses and its Counterclaim concerning the final accounting, subcontracts and alleged roof leaks which the Debtor asks this Court to hear anew." (Doc. 94 at 12.) CrossPlex countered that "delays and defaults" by JohnsonKreis prevented CrossPlex "from asserting any claims against [JohnsonKreis] for the roof defects," charging misconduct by JohnsonKreis in the arbitration itself. (Doc. 80 at 11.) Further, CrossPlex urged that it "did not even learn that roof defects had not been properly repaired until after the deadline for filing a counterclaim had passed" and, as such, "the arbitrator flatly refused to hear any of the Debtor's complaints regarding the roof." (Doc. 80 at 12.) This Court considered the arguments and submissions of both sides as well as the portion of the arbitration record that was provided. In doing so, this Court found that JohnsonKreis sustained its burden of proving that cause existed to lift the automatic stay on a limited basis. The Order granting stay relief was entered on November 10, 2020. (Doc. 146.)

9

Immediately before the hearing on JohnsonKreis's stay relief motion, CrossPlex filed this adversary proceeding against JohnsonKreis on September 22, 2020. (Doc. 1.) That same day, Urban Development Consortium, LLC, listed as the developer of CrossPlex Village, filed a separate adversary proceeding against JohnsonKreis. Both complaints focus on construction mistakes at CrossPlex Village; primarily, defective roofs and associated leaks. (Cf. AP Doc. 1, 20-00038; AP Doc. 1, 20-00039.) CrossPlex amended the complaint in the instant adversary proceeding on December 9, 2020, to add defendants Hartford Fire Insurance Company and Bear Roofing, LLC. (Doc. 13.) The amended complaint alleged that "[b]ecause JohnsonKreis concealed the extent of the roof leaks and defects from [CrossPlex], [CrossPlex] was unaware and had no knowledge of the roof issues that continue to plague the Buildings to this day." (AP Doc. 13 at ¶ 59.) The amended complaint also alleged that upon learning of the roof defects, CrossPlex filed a warranty claim with JohnsonKreis a few days before the final arbitration hearing. (AP Doc. 13 at ¶ 60.) Shortly after the arbitration concluded, JohnsonKreis denied that warranty claim. And because "the claims surrounding the roof leaks and JohnsonKreis's refusal to honor its warranty were never alleged in the Arbitration," they serve as the basis for the amended complaint filed in this adversary proceeding. (AP Doc. 13 at ¶¶ 61-62.)

The arbitrator entered a revised[7] Final Arbitration Award in JohnsonKreis's favor on December 8, 2020. (AP Doc. 14-1, Exh. E at 10.) It awarded JohnsonKreis damages and expenses in the amount of $1,664,952 and $14,857.38, respectively. (AP Doc. 14-1, Exh. E at 10.) Additionally, the award denied recovery for CrossPlex on its counterclaim, finding "insufficient credible evidence to support the matters alleged in the counterclaim to constitute breaches of the

---

[7] The arbitrator revised the final award to omit any substantive ruling on issues related to lien claims consistent with this Court's ruling on stay relief which denied the motion to stay as to any additional relief beyond the authorization for the arbitrator to issue his award. (Doc. 146.)

construction contract . . . ." (AP Doc. 14-1, Exh. E at 8.) The Revised Final Award was entered as a judgment of the Circuit Court of Jefferson County, Alabama, on December 31, 2020. (AP Doc. 23-1, Exh. C.)

JohnsonKreis moves to dismiss the amended complaint on grounds that the arbitration judgment precludes prosecution of the instant lawsuit because the elements of *res judicata* are met. (AP Doc. 23.) JohnsonKreis asserts alternative or additional grounds for dismissal on other theories as well, such as law of the case and collateral estoppel. (AP Doc. 23.) And if dismissal is not warranted, JohnsonKreis moves this Court to abstain from hearing the amended complaint. (AP Doc. 23.) CrossPlex opposes dismissal relying, in part, on the affidavit of Benjamin McArthur, counsel for CrossPlex during the arbitration. In that affidavit, Mr. McArthur avers that CrossPlex "did not assert any claims for damages against JohnsonKreis relating to defective roofs during the Arbitration" and that the "claims and causes of action asserted by [CrossPlex] against JohnsonKreis and the other Defendants in this Adversary Proceeding were never asserted or adjudicated during the Arbitration." (Doc. 14-1 at ¶¶ 10, 11.)

**Procedural Overview**

As JohnsonKreis is quick to point out, this adversary proceeding was commenced "on the eve of the hearing" for its stay relief motion in CrossPlex's chapter 11 case. (AP Doc. 23 at 1.) The motion sought relief from the automatic stay to allow the arbitrator (who presided over an eleven-month arbitration between JohnsonKreis and CrossPlex that concluded prepetition) to issue his award. (Doc. 55.) So, procedurally speaking, at the time JohnsonKreis responded to the original complaint in this case, the arbitration had concluded but no award had been issued and, consequently, there was no judgment due to the intervening chapter 11 bankruptcy case. Accordingly, JohnsonKreis initially sought dismissal of this adversary proceeding only in

11

connection with doctrines of mandatory and permissive abstention. Since then, a few things have happened; namely, stay relief was granted in the chapter 11 case, CrossPlex filed an amended complaint here, the arbitrator entered a revised final award, and the Jefferson County Circuit court entered the arbitration award as a judgment. Now that there is a judgment in place, JohnsonKreis has moved to dismiss this adversary proceeding on *res judicata* grounds. And while JohnsonKreis still maintains that abstention is warranted, *res judicata* leads the argument for dismissal.[8] (AP Doc. 23.)

## Conclusions of Law

### Res Judicata

"*Res judicata* is a judicially crafted doctrine, created to provide finality and conserve resources." *Maldonado v. U.S. Atty. Gen.,* 664 F.3d 1369, 1375 (11th Cir. 2011) (citations omitted). It "bars the parties to an action from relitigating matters that were or could have been litigated in an earlier suit." *Shurick v. Boeing Co.*, 623 F.3d 1114, 1116 (11th Cir. 2010). By its operation, therefore, *res judicata* "facilitates the conclusive resolution of disputes by reducing the expense and vexation attending multiple lawsuits, conserv[ing] judicial resources, and foster[ing] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Shurick v. Boeing Co.,* 623 F.3d 1114, 1116 (11th Cir. 2010) (citing *Montana v. United States,* 440 U.S. 147 (1979).

---

[8] To the extent that JohnsonKreis's first responsive pleading titled "Motion to Abstain and Dismiss Complaint" (AP Doc. 8) is rendered moot by the filing of the amended complaint, this Court has, in its discretion, considered arguments from that initial pleading that JohnsonKreis has incorporated into its second responsive pleading by reference.

12

This Court "must apply the *res judicata* principles of the law of the state whose decision is set up as a bar to further litigation" when deciding "whether to give *res judicata* effect to a state court judgment." *Green v. Jefferson Cnty. Comm'n,* 563 F.3d 1243, 1252 (11th Cir. 2009). Accordingly, Alabama's *res judicata* principles apply in considering whether this adversary proceeding is precluded by the JohnsonKreis-CrossPlex arbitration. Under Alabama law, "[t]wo causes of action are the same for *res judicata* purposes when the following four elements are satisfied: '(1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both actions.'" *Chapman Nursing Home, Inc. v. McDonald*, 985 So.2d 914, 919 (Ala. 2007) (citing *Equity Res. Mgmt., Inc. v. Vinson,* 723 So.2d 634, 636 (Ala. 1998). If these four elements are satisfied "then any claim that was, or that could have been, adjudicated in the prior action is barred from further litigation." *Vinson,* 723 So.2d at 636 (Ala. 1998) (citing *Dairyland Ins. Co. v. Jackson,* 566 So.2d 723, 725–26 (Ala.1990)).

Before turning to the application of *res judicata* elements to this case, the issue of whether JohnsonKreis's *res judicata* defense can be resolved on a motion to dismiss is paramount. CrossPlex contends that as an affirmative defense, *res judicata* should be raised under Federal Rule of Civil Procedure 8(c), not Rule 12(b). (AP Doc. 28 at 8.) And to the extent *res judicata* can be raised by motion, it is only in cases where the existence of this defense can be judged on the face of the complaint. And CrossPlex urges that is *not* the case here. (AP Doc. 28 at 8.) Moreover, if this Court looks beyond the four corners of the amended complaint and considers matters outside the pleadings (that JohnsonKreis relies on in support its *res judicata* defense), then, according to CrossPlex, the motion must be converted to one for summary judgment. In pursuing this line of thinking, CrossPlex forgoes any discussion of the *res judicata* elements, instead urging that *res*

13

*judicata* cannot be judged from the face of the amended complaint and, even if it could, conversion to summary judgment is warranted. (AP Doc. 28 at 6.)

Despite CrossPlex's arguments, the Court is persuaded that the existence of the *res judicata* defense can be determined from the face of the amended complaint, and therefore consideration of this defense on a motion to dismiss is appropriate. *See Solis v. Global Acceptance Credit Co., L.P.,* 601 Fed. Appx. 767, 771 (11th Cir. 2015) ("Although *res judicata* is not a defense under Rule 12(b), and generally should be raised as an affirmative defense under Rule 8(c), Fed. R. Civ. P., it may be raised in a Rule 12(b)(6) motion where the existence of the defense can be determined from the face of the complaint.") (citation omitted). Here, it is clear from the face of the amended complaint that there was an arbitration between JohnsonKreis and CrossPlex. (AP Doc. 13 at ¶¶ 57, 62.); *see Solis,* 601 Fed. Appx. At 771 ("it was clear on the face of the complaint that Solis had filed a recent action against the same defendants that was dismissed by the district court.") Nor is the Court persuaded that consideration of matters outside the pleadings necessarily converts JohnsonKreis's motion to one for summary judgment. Indeed, "[w]hen ruling on a Rule 12(b)(6) motion on grounds of *res judicata,* the district court should look at a copy of the state trial court's records, if they have been introduced into evidence." *Johnson v. Girl Scouts of the USA*, 596 Fed. Appx. 797, 798 (11th Cir. 2015). Also, it is appropriate for the Court to consider "its own records in resolving the defendant's motion to dismiss." *Solis,* 601 Fed. Appx. at 771.

Clearly, the parties are at odds about the propriety of JohnsonKreis's *res judicata* defense and whether its consideration necessarily converts the motion to dismiss into a motion for summary judgment. These issues notwithstanding, it is too early under the facts and circumstances pleaded by CrossPlex to rule in favor of JohnsonKreis. To be clear, it is not too early to raise such a defense by motion; rather, it is too early to prevail on such a defense in this case under Rule

12(b). Indeed, it is a function of the applicable standard at the motion to dismiss stage of this case that makes *res judicata* untenable. This is so because all the *res judicata* elements cannot be satisfied when the factual allegations of the amended complaint are accepted as true.

It is well-settled that "[o]n a motion to dismiss, a court is required to accept all factual allegations in the complaint as true and to consider the inferences derived from those facts in the light most favorable to the plaintiff."[9] *Williams v. Patterson*, No. 12-592-WS-M, 2013 WL 4827932, at *5 (S.D. Ala. 2013) (citing *Starship Enters. Of Atlanta, Inc. v. Coweta Cnty., Ga.,* 708 F.3d 1243 (11th Cir. 2013); *see Wood v. Moss*, 572 U.S. 744, 755 n. 5 (2014) ("In ruling on a motion to dismiss, we have instructed, courts must take all of the factual allegations in the complaint as true, but are not bound to accept as true a legal conclusion couched as a factual allegation." (internal citation and quotation marks omitted)). Because this is the standard to which this Court must adhere, JohnsonKreis cannot prevail unless *res judicata* defeats CrossPlex's claim even when the allegations in the amended complaint are accepted as true.

The Court is persuaded that three of the *res judicata* elements are present: (1) there is a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties. CrossPlex has not specifically addressed the operative *res judicata* elements, but it does not dispute that a court of competent jurisdiction rendered a prior judgment involving CrossPlex and JohnsonKreis. The pinch point is the fourth element: whether the same cause of action is presented in both actions. Not surprisingly, JohnsonKreis maintains that this final *res judicata* element is also easily satisfied and, frankly, there is reason enough for their position.

---

[9] Courts considering *res judicata* defenses that are raised by motion, as opposed to a Rule 8(c), do so pursuant to Rule 12(b)(6). *See Solis v. Global Acceptance Credit Co., L.P.*, 601 Fed. Appx. 767, 771 (11th Cir. 2015) (citing *Concordia v. Bendekovic,* 693 F.2d 1073, 1075 (11th Cir.1982) for the proposition that *res judicata* "may be raised in a Rule 12(b)(6) motion where the existence of the defense can be determined from the face of the complaint.")

Afterall, JohnsonKreis is correct that, as it relates to whether the "same cause of action" element is met, Alabama courts apply *res judicata* "not only to the *exact legal theories* advanced in the prior case, but to *all legal theories and claims* arising out of the same nucleus of operative facts." *Chapman Nursing Home, Inc. v. McDonald*, 985 So.2d 914, 921 (Ala. 2007) (internal citation and quotation marks omitted). It is also true that two causes of action are the same for *res judicata* purposes when the same evidence is applicable in both actions. *McDonald,* 985 So.2d at 921. Moreover, if the *res judicata* elements are met then any claim that *could* have been "adjudicated in the prior action is barred from further litigation." *Id.* at 919 (citation omitted). Even still, whether the two causes of action are the same must be evaluated in the context a motion to dismiss where this Court must accept CrossPlex's factual allegations as true but cannot resolve conflicting factual inferences. *Tate v. CitiMortgage, Inc. (In re Tate),* No. 09-0039-WS-M, 2010 WL 320488, *1, *6 (S.D. Ala. Jan. 19, 2010).

To that end, CrossPlex alleged that "[b]ecause JohnsonKreis concealed the extent of the roof leaks and defects from [CrossPlex], [CrossPlex] was unaware and had no knowledge of the roof issues that continue to plague the Buildings to this day." (AP Doc. 13 at ¶ 59.) CrossPlex also alleged in the amended complaint that "[u]pon learning of the roof leaks and defects, [CrossPlex] filed a warranty claim with JohnsonKreis for the necessary repairs on or about July 10, 2020." (AP Doc. 13 at ¶ 60.) According to the amended complaint, JohnsonKreis denied the warranty claim on or about July 29, 2020. (AP Doc. 13 at ¶ 61.) Since the arbitration "began on July 13 and concluded on July 15 of 2020, the claims surrounding the roof leaks and JohnsonKreis's refusal to honor its warranty were never alleged in the Arbitration and are now the basis for this Adversary Proceeding." (AP Doc. 13 at ¶ 62.)

16

Accepting these alleged facts as true, as the Court must in deciding this motion to dismiss, CrossPlex did not know the extent of the roof defects or water damage in time to arbitrate them, or have knowledge sufficient to compel raising these claims during the arbitration. If, as CrossPlex alleges, it did not know of the roof leaks, and "[u]pon learning of the roof leaks and defects . . . filed a warranty claim . . . on or about July 10, 2020," then they would not have been compelled to file a compulsory counterclaim under Alabama law, which requires knowledge of a claim before it can be deemed compulsory. *Sho-Me Motor Lodges, Inc. v. Jehle-Slauson Const. Co*., 466 So.2d 83, 90 (Ala. 1985) ("Implicit within this requirement, however, is the *knowledge* that one has a claim against the opposing party. Certainly Rule 13(a) cannot be construed to require a party to file as a compulsory counterclaim a claim which it does not know it has."). This notion of knowledge is consistent with the Eleventh Circuit's "frequent pronouncement that res judicata does *not* apply where the facts giving rise to the second case only 'arise after the original pleading is filed in the earlier litigation.'" *In re Piper Aircraft Corp*., 244 F.3d 1289, 1298 (11th Cir. 2001) (citing *Manning v. City of Auburn,* 953 F.2d 1355, 1360 (11th Cir. 1992). Thus, the Court has held:

> [W]e do not believe that the res judicata preclusion of claims that 'could have been brought' in earlier litigation includes claims which arise after the original pleading is filed in the earlier litigation. Instead, we believe that, for res judicata purposes, claims that 'could have been brought' are claims *in existence at the time the original complaint is filed* or claims actually asserted ... in the earlier action.

*In re Piper Aircraft Corp*., 244 F.3d at 1298 (11th Cir. 2001) (internal citation omitted).

In the context of denying an interlocutory bankruptcy appeal, the United States District Court for the Southern District of Alabama considered the interplay of accepting the plaintiff's allegation as true in face of a *res judicata* defense. *In re Tate,* 2010 WL 320488, at *6. In that case, CitiMortgage argued that the bankruptcy court erred by not considering facts in public records in support of its affirmative defenses including *res judicata*. *Id*. In concluding that an interlocutory

appeal would "not materially advance the ultimate termination" of the litigation, the Court observed:

> . . . the documents in question would, if considered, yield conflicting factual inferences that cannot be resolved at the motion to dismiss stage. Indeed, the Third Amended Complaint contained a specific factual allegation that "[t]he improper nature of Defendant's affidavits is not readily apparent from reviewing a single affidavit. In order to discover the nature and scope of Defendant's misconduct, it is necessary to review multiple affidavits filed by Defendant." (Third Amended Complaint, ¶ 21.) That statement, like all other well-pleaded facts in the complaint, must be accepted as true for purposes of a motion to dismiss . . . . In urging the Bankruptcy Court to examine public records concerning the underlying bankruptcy actions, CitiMortgage's point was that the Adversary Proceeding was barred because plaintiffs knew or should have known about the defective affidavits during those underlying bankruptcy cases, but did not object then. Stated differently, the affirmative defenses at issue on this requested appeal (*res judicata*, waiver, laches) proceed from the proposition that Tate and the Adamses knew or should have known about the fraudulent or improper nature of the affidavits back when their Chapter 7 or Chapter 13 proceedings were pending, and that their failure to raise the issue then bars them from doing so now. But the well-pleaded factual allegations of the Third Amended Complaint are to the contrary. Tate and the Adamses allege that they could not perceive the nature and scope of the alleged fraud and impropriety at the time. Thus, even if the public records were considered, plaintiffs' factual allegation that the improper nature of CitiMortgage's affidavits was not apparent in isolation would create factual issues necessitating denial of the motion to dismiss in the Adversary Proceeding.

*Id.*

Like the *Tate* case, the allegations of CrossPlex's amended complaint (including that CrossPlex "had no knowledge of the roof issues that continue to plague the Buildings to this day") are contrary to JohnsonKreis's contention that CrossPlex "had knowledge of the alleged roof defects well in advance of the arbitration." (*Compare* AP Doc. at ¶ 59 with AP Doc. 23 at 6.) Consequently, a factual issue exists that cannot be resolved on a motion to dismiss.

Mindful of the standard to which this Court must adhere, the undersigned cannot conclude at this juncture that CrossPlex knew of facts giving rise to the claims asserted here — namely, breach of contract, indemnification, negligence, wantoness, fraud and misrepresentation, and fraudulent concealment and suppression — at the time when it served its counterclaim on

JohnsonKreis in the arbitration. (AP Doc. 14-1, Exh. C at ¶ 7.) The Court reaches this conclusion aware of JohnsonKreis's contention that there is undisputed evidence that CrossPlex "had knowledge of the alleged roof defects well in advance of the arbitration" based on the deposition testimony of its corporate representative, Robert Nesbitt. (AP Doc. 23.) The Court reaches this conclusion also aware of the fact that JohnsonKreis maintains that CrossPlex did litigate the alleged roof defects in the arbitration. (AP Doc. 23 at 8.) First, as it relates to the Nesbitt deposition testimony, it is true that CrossPlex's representative testified that he observed leaks "shortly after the hotel opening" in September of 2018. (AP Doc. 23, Exh. D at 182:20-183:6.) But drawing all inferences in favor of the plaintiff because the pending matter is a motion to dismiss, the Court does not, at this juncture, find the testimony to be dispositive. It is at least plausible that, as Nebsitt testified, he believed that work was done to resolve the leaks and, therefore, the roof defects and water damage alleged in the amended complaint constitute a distinct or different factual predicate. (AP Doc. 23, Exh. D at 183:10-13.) The point being, the Court must indulge the plaintiff's version of events at this stage and doing so means that JohnsonKreis cannot prevail at this time on its *res judicata* defense.

Nor is this Court persuaded by the record that the claims made in the amended complaint were actually asserted or litigated in the arbitration. CrossPlex's counterclaim in the arbitration was for breach of contract and it alleged that JohnsonKreis (1) demanded payment for contingency costs without obtaining prior written approval, (2) demanded payment for retainage for costs paid directly by CrossPlex; and (3) demanded payment for work that JohnsonKreis did not perform or substantiate as the operative contract required. (AP Doc. 14-1, Exh. C at ¶ 7.) No mention of roof defects, roof leaks, or water damage was made in the counterclaim. (*Id.*) Notwithstanding, JohnsonKreis maintains that CrossPlex's prehearing brief and proposed award evinces that

CrossPlex litigated the alleged roof defects throughout the arbitration. (Doc. 23 at 8.) But these unpled references do not necessarily mean that the claims asserted in amended complaint were actually litigated in the arbitration. *See Fleming v. Universal-Rundle Corp.,* 142 F.3d 1354, 1358 (11th Cir. 1998) (holding that the "discussion of related but distinct cause of action in briefs [did not] amount[] to the *actual assertion* of that claim" for *res judicata* purposes).

JohnsonKreis offers the arbitrator's award as proof that CrossPlex has already arbitrated its roof-leak claims. Specifically, JohnsonKreis points to the arbitrator's conclusion that "there was insufficient credible evidence to support the contention that roof leaks in the Comfort Inn Hotel in late January 2018 were the cause of any critical path delay." (AP Doc. 23 at 8.) Here again, the Court is unpersuaded at this juncture that this "isolated reference" means that the arbitrator "actually adjudicated an unpled and unasserted claim." *Fleming,* 142 F.3d at 1359 ("The isolated reference in the magistrate judge's report does not support the defendant's contention that the magistrate judge and the district court actually adjudicated an unpled and unasserted claim."). Furthermore, Benjamin L. McArthur, CrossPlex's legal counsel at the arbitration, has declared under penalty of perjury that "[t]he claims and causes of action asserted by Debtor against JohnsonKreis and the other Defendants in this Adversary Proceeding were never asserted or adjudicated during the Arbitration." (Doc. 14-1, Exh. 1 at ¶ 11.)

Finally, this Court's stay relief ruling is not dispositive of the issue of whether the claims asserted in the amended complaint were actually asserted or litigated in the arbitration. To begin, the roof leaks referenced by the Court in its stay relief Order were taken from CrossPlex's proposed award, not a pleading; therefore, they are not, strictly speaking, conclusive of what was or was not arbitrated. Further, the references were made in the context of a stay relief motion where an eleven-month arbitration had concluded and awaited only the arbitrator's award. CrossPlex opposed

20

lifting the stay to allow the arbitrator to issue his award on grounds of a flawed arbitration, arguing JohnsonKreis's misconduct during the arbitration and the refusal of the arbitrator to "hear any of the Debtor's complaints regarding the roof . . . ." (Doc. 80.) This Court was not persuaded by CrossPlex's allegations of arbitration misconduct as justification for a do-over of the concluded arbitration. Hence the references to CrossPlex's proposed award citing roof leaks and the ruling that this Court does not sit in review of the arbitration. Those references are just that. They do not constitute a ruling that CrossPlex did, in fact, arbitrate the roof leaks now asserted in this adversary proceeding. Further, in deciding the stay relief motion, the Court did not examine in detail the factual issues that must be decided in this adversary proceeding or compare them to the issues explored in the arbitration. Indeed, the amended complaint had yet to be filed at the time this Court issued its stay relief ruling. *See Fleming,* 142 F.3d at 1357 (holding in the context of *res judicata,* a court "must examine the factual issues that must be resolved in the second suit and compare them with the issues explored in the first case.") For these reasons and with the attendant standard of review, the Court is unpersuaded that dismissal at this stage of the litigation is warranted on *res judicata*, law of the case doctrine, collateral estoppel, or any other grounds of preclusion.[10]

**Abstention**

As previously asserted in its response to CrossPlex's original complaint, JohnsonKreis has renewed its request for this Court to abstain on mandatory or permissive grounds. (AP Doc. 8.)

---

[10] Nor is the Court persuaded that dismissal is warranted because the amended complaint is an impermissible collateral attack on the arbitration award. Construing the allegations of the amended complaint in a light favorable to CrossPlex, the Court is unconvinced that that the amended complaint (unlike the arguments raised in connection with the stay relief proceedings) attack the integrity of the arbitration. Indeed, CrossPlex has disavowed any allegation in this adversary proceeding that there was misconduct in the arbitration itself. (Doc. 28 at 10) ("Here, Debtor is not challenging the propriety of the Arbitration award nor does it seek to dredge up the defects or flaws with such proceeding.") Accordingly, the Court finds no compelling reason to dismiss this adversary proceeding at this point based on an improper collateral attack.

Turning first to mandatory abstention, "a bankruptcy court must abstain from hearing a state-law claim if (1) the claim has no independent basis for federal jurisdiction, other than § 1334; (2) the claim is related to, but does not arise under or in, a bankruptcy case; (3) an action has been commenced in state court; and (4) that action can be timely adjudicated in that state-court proceeding. 28 U.S.C. § 1334(c)(2)." *Kachkar v. Bank of America N.A., (In re Kachkar)*, 769 Fed. Appx. 673, 680 (11th Cir. 2019). "A party is not entitled to mandatory abstention if it fails to prove any one of the statutory requirements." *In re EZ Pay Services, Inc*., 390 B.R. 421, 424 (Bankr. M.D. Fla. 2007) (internal citation omitted).

Despite its opposition, CrossPlex concedes that elements one and two favor mandatory abstention; as such, there is no dispute that the claims asserted in the amended complaint are state law claims that have no independent basis for federal jurisdiction other than § 1334, and that they are only "related to" the chapter 11 case. (AP Doc. 14 at 6.) What *is* disputed is whether elements three and four have been met, narrowing the issue to whether an action has been commenced in state court that can be timely adjudicated. Now that the arbitrator has entered his award and judgment has been entered by the circuit judge in favor of JohnsonKreis, the state court case is disposed of and there is no longer a state court proceeding to which the claims from the amended complaint can be remanded.

Without deciding whether an action has been commenced in state court with respect to the specific claims asserted in the amended complaint, the Court finds that whether the state court action can be timely adjudicated has not been proven by a preponderance of the evidence, and therefore, mandatory abstention is not warranted. *In re Lorax Corp.,* 295 B.R. 83, 90 (Bankr. N.D. Tex. 2003) ("The party requesting abstention must prove the existence of each element by a preponderance of the evidence.").

22

CrossPlex represents that the "Circuit Court's back-log of cases that need to be tried caused by COVID" make timely adjudication untenable. (AP Doc. 14 at 9.) This representation has not been convincingly disputed, if disputed at all. Further, "[t]imely adjudication is not measured against an absolute time guideline, but rather measured by the needs of the bankruptcy case." *In re 3G Properties, LLC*, No. 10-04763-8-JRL, A.P. No. 10-00178-8-JRL, 2010 WL 4027770, at *3 (Bankr. E.D.N.C. 2010), (citing *Suntrust Bank v. Ferrell (In re Pluma)),* No. 99-11104C-11G, 2000 WL 33673752, *2 (Bankr. M.D.N.C. 2000) (citing 1 Collier on Bankruptcy ¶ 3.05[2] (15th ed. rev. 2000)). Thus, "[e]ven if a related proceeding could be adjudicated in state court in a short time, that adjudication may not be timely 'if that amount of delay would prejudice the bankruptcy case.'" *Id.* Moreover, "[i[f the underlying bankruptcy case is a Chapter 11 case and it is prior to confirmation, any significant delay in resolving claims which might substantially enhance the viability of the estate may prove fatal to the reorganization." *United Beverage Florida, LLC v. General Electric Co., (In re United Container LLC)*, 284 B.R. 162, 175 (Bankr. S.D. Fla. 2002). "Thus, in a Chapter 11 case, timely adjudication may be a critical factor on the decision to abstain." *In re United Container LLC*, 284 B.R. at 175. Therefore, to the extent that a delay would prejudice CrossPlex's chapter 11 case, and because the evidence does not prove the existence of each mandatory abstention element by a preponderance, mandatory abstention is not required here.

The Court is likewise unpersuaded that, in the exercise of its discretion, it should permissively abstain from hearing this adversary proceeding. CrossPlex concedes that several of the factors that courts typically consider in deciding permissive abstention favor abstaining.[11] But

---

[11] The factors courts consider in deciding whether to permissively abstain include: "1. The effect on the efficient administration of the estate; 2. The extent to which state law issues predominate over bankruptcy issues; 3. The difficulty or unsettled nature of applicable state law; 4. The presence of a related proceeding commenced in state court or other non-bankruptcy court; 5. The jurisdictional basis, if any, other than § 1334; 6. The degree of relatedness or remoteness of the proceeding to the main bankruptcy case; 7. The substance rather than the form of an asserted "core" proceeding; 8. The feasibility of severing state law

23

according to CrossPlex, the effect on the efficient administration of the bankruptcy estate, the well-settled nature of applicable state law, the COVID-induced back log in state Circuit Court, and other factors, weigh against permissive abstention. Moreover, it is JohnsonKreis that bears the burden of establishing that permissive abstention is warranted. *See In re Strathmore Group, LLC*, 522 B.R. 447, 457–58 (Bankr. E.D.N.Y. 2014).

"Courts need not address all twelve factors when determining whether to permissively abstain." *In re Strathmore Group, LLC*, 522 B.R. at 457–58 (internal citation omitted). But having considered both the arguments for and against permissive abstention in the context of all relevant factors, the Court is unconvinced that it should permissively abstain. This is not a case, for example, that raises difficult questions of state law. *See In re Jefferson Cnty. Alabama,* 484 B.R. 427, 440 (Bankr. N.D. Ala. 2012) ("Indeed, a primary determinant for abstaining pursuant to § 1334(c)(1) and the case law abstention doctrines is whether a case presents unsettled or difficult questions of state law."). This case is a contractual dispute over roof defects and water leaks. And "[t]he mere presence of state law issues is insufficient to justify abstention, even if there are no other issues in the proceeding." *In re Jefferson Cnty. Alabama,* 484 B.R. at 440. In reaching this conclusion, the Court is mindful that because "permissive abstention is an exception to a court's general obligation to exercise conferred jurisdiction, it should be granted sparingly." *In re Strathmore Group, LLC*, 522 B.R. at 457–58.

---

claims from core bankruptcy matters to allow judgments to be entered in state court to be enforced by the bankruptcy court; 9. The burden on the court's docket; 10. The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; 11. The existence of the right to a jury trial; 12. The presence of non-debtor parties." *Morgan v. Melissa Land Taylor Mgmt. Trust, (In re Land)*, No. 10-70786, Adv. No. 11-70023, 2013 WL 414448, at *3 (Bankr. N.D. Ala. Jan. 30, 2013).

Lastly, this is not a case where the Court finds exception to its "virtually unflagging obligation . . . to exercise the jurisdiction." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976). Generally, "the pendency of an action in the state court is no bar to proceedings concerning the same matter;" consequently, *Colorado River* abstention only applies in "exceptional circumstances." *Colorado River,* 424 U.S. at 817–18 (internal quotation marks omitted); *Jackson-Platts v. General Elec. Capital Corp.*, 727 F.3d 1127, 1140–41 (11th Cir. 2013). Indeed, "[o]nly the clearest of justifications" merits abstention. *Colorado River,* 424 U.S. at 819. "As the Supreme Court explained [in *Colorado River*], and as [the Eleventh Circuit] has repeatedly cautioned, abstention is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Jackson-Platts,* 727 F.3d at 1140-41. Bearing these tenets in mind, the Court is unconvinced that *Colorado River* abstention is warranted.

The threshold for application of *Colorado River* abstention requires "substantially the same parties and substantially the same issues." *Ambrosia Coal & Constr. Co. v. Pagés Morales,* 368 F.3d 1320, 1330 (11th Cir.2004)*.* Here, defendants that are not parties to the Jefferson County Circuit court case have been sued. Also, the amended complaint pleads claims that have not been asserted in state court. Even if this threshold is cleared, other factors bear consideration, namely: (1) the order in which the courts assumed jurisdiction over property; (2) the relative inconvenience of the fora; (3) the order in which jurisdiction was obtained and the relative progress of the two actions; (4) the desire to avoid piecemeal litigation; (5) whether federal law provides the rule of decision; and (6) whether the state court will adequately protect the rights of all parties. These factors do not show this case to be exceptional for purposes of *Colorado River* abstention. For example, this Court has jurisdiction over all property of the Debtor's bankruptcy estate, no party has demonstrated that this Court is an inconvenient forum, and there has been no progress in state

court concerning two of the defendants and the claims asserted against them in the amended complaint. In the end, this Court must "weigh the factors with a heavy bias favoring the federal courts' obligation to exercise the jurisdiction that Congress has given them." *Jackson-Platts,* 727 F.3d at 1140-41 (internal citation omitted). Doing so means that this case is not one to invoke "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Id.*

**Conclusion**

The motion to dismiss stage of this case requires the Court to accept as true the factual allegations pleaded in amended complaint. It also requires the Court to give the plaintiff the benefit of all reasonable inferences that can be drawn from those allegations. *See Hazewood v. Foundation Financial Group, LLC*, 551 F.3d 1223, 1224 (11th Cir. 2008). Against this standard and at this juncture of the case, JohnsonKreis's *res judicata* defense falls short. Put simply, the Court cannot square the allegations of the amended complaint (when accepted as true) with all the necessary elements of *res judicata*. And to the extent there is a factual dispute about what was or was not litigated during the arbitration, that dispute cannot be resolved on a motion to dismiss.

Nor is this Court persuaded that any other ground of preclusion warrants dismissal at this time. For the reasons previously articulated, this Court is likewise unpersuaded that the facts and circumstances are exceptional enough to merit abstention. Indeed, if this Court were to abstain from hearing the amended complaint, there is no longer a pending state court case to which CrossPlex's claims may be remanded.

Based on these conclusions and for the reasons set forth in this opinion, the Motion to Dismiss (AP Doc. 23) is DENIED and the Motion to Abstain and Dismiss Complaint (AP Doc. 8)

is DENIED as MOOT. JohnsonKreis has 14 days after notice of the Court's action to serve a responsive pleading to CrossPlex's amended complaint pursuant to Bankruptcy Rule 7012(a)(1).

As stated in the Hartford Motion to Dismiss, "all claims against Hartford are based solely on JohnsonKreis' alleged nonperformance under the construction contract." (AP Doc. 25 at ¶ 1.) And, "Hartford is entitled to rely upon JohnsonKreis' defenses…" (*Id*. at ¶ 6.) Accordingly, for the reasons stated herein, the Hartford Motion to Dismiss (AP Doc. 25) is also DENIED. Hartford Fire Insurance Company has 14 days after notice of the Court's action to serve a responsive pleading to CrossPlex's amended complaint pursuant to Bankruptcy Rule 7012(a)(1).


Dated: March 9, 2021

/s/ D. Sims Crawford
D. SIMS CRAWFORD
United States Bankruptcy Judge